**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                        :
**MICHAEL CHARLES GRILLE**              :
                                        :
Plaintiff,                              :
                                        :       Civ. Action No.: 15-6204 (FLW)
v.                                      :
                                        :              **OPINION**
**CAROLYN W. COLVIN, ACTING**           :
**COMMISSIONER OF SOCIAL**              :
**SECURITY**                            :
                                        :
Defendant.                              :
_____:


**WOLFSON, United States District Judge:**

Michael Charles Grille ("Plaintiff" or "Grille") appeals from the final decision of the Acting Commissioner of Social Security, Carolyn W. Colvin ("Defendant"), denying Plaintiff disability insurance benefits under Title II of the Social Security (the "Act").  After reviewing the Administrative Record, the Court finds that the Administrative Law Judge's (the "ALJ") opinion was based on substantial evidence and, accordingly, affirms that decision.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff was born on September 13, 1954, and was 52 years old on his alleged disability onset date of December 31, 2006.  See Administrative Record 53 (hereinafter "A.R.").  Plaintiff worked as a self-employed general contractor.  A.R. 37-39, 42.  On February 29, 2012, Plaintiff applied for Social Security disability insurance benefits, complaining of foot and lower back pain.  A.R.  38.  Plaintiff's claims were denied on March 13, 2012, and again upon reconsideration on August 17, 2012.  A.R. 65-67, 73.  Plaintiff then requested a hearing, see A.R. 76, which was held

on July 3, 2013, before ALJ Judge Nicholas Cerulli.  A.R. 32-50.  At the hearing, Plaintiff was the only witness who testified.  See A.R. 32-50.  On July 24, 2013, the ALJ issued a written decision, concluding that Plaintiff "was not under a disability within the meaning of the Social Security Act from December 31, 2006, through the date of last insured, December 31, 2008."  A.R. 24. Specifically, the ALJ concluded that Plaintiff did not meet his burden at Step One of a five-step process required to determine whether an individual is disabled, and as such, the ALJ did not proceed to the remaining four Steps.  Plaintiff requested review by the Appeals Council, which was denied on June 11, 2015.  A.R. 4-6.  Plaintiff then filed the instant Complaint on August 14, 2015.

## A.      Review of Testimonial Record

At the hearing on July 3, 2013, Plaintiff testified that he was a "self-employed" general contractor who owned a "small construction company."  A.R. 42.  Plaintiff generally explained that his responsibilities included building residential homes.  A.R. 38.  Plaintiff was also responsible for supervising the work done on the punch list, and he would walk through the house with the buyers prior to closing.  A.R. 43.  While he did not perform any administrative duties, see A.R. 40, Plaintiff did make managerial decisions, such as hiring and overseeing subcontractors. A.R. 41.  Although Plaintiff "would draw... a minimal check each week" from the company for his labor, he "didn't really, really get paid until, until closing" of a house.  A.R. 41.  He further testified, "I don't think 2007 was too heavy. A lot of our closings came in I think 2008."  A.R. 41.

Before Plaintiff testified at the hearing, his counsel requested that the ALJ amend the disability onset date to "July of 2008."  See A.R. 37.  Immediately thereafter, however, Plaintiff testified that his disability onset date was December 31, 2006, because his "ability to actually [do] work on a regular basis, you know, start[ed] to decline… prior to that I was you know six, seven

days a week, low back, foot started acting up, and I was just unable to work that, you know, pace that I was prior to this." A.R. 38.  In 2006, Plaintiff explained that he was "building at the time, you know, I basically [did] hands on, on the job site I was doing anything from foundations to light framework, roofing, HVAC work, which I originally started out the business with, basically handled – was hands on, on the entire project." A.R. 38.  Plaintiff testified that he was working approximately "seven days a week" in 2006 because "[i]t was a busy time." A.R. 39.

In 2007, Plaintiff continued to build houses: "I would basically [do] pretty much whatever came up.  Sometimes operating a piece of equipment on the days, we'd be putting in a sewer.  Some other days we'd be pouring foundation, you know, it was, like I said I pretty much handled every aspect of the job." A.R. 38-39.  That same year, however, Plaintiff testified that his "health started to deteriorate," and that he "wasn't working quite as much as, put it this way, at the level I was in 2006." A.R. 38.  Because of his health, Plaintiff stated that his "days started to become shorter." A.R. 38.  In addition, if Plaintiff had done strenuous work the prior day, "[he] was unable to perform the following day." A.R. 38-39.  For instance, Plaintiff stated that, "if I [was] doing concrete work, you know a lot of time I wasn't able to you know get up and move the following day." A.R. 39.  Despite his deteriorating health, Plaintiff testified that he "was probably going a good 50 hours, 50, 60 hours a week, which was pretty much a normal workweek." A.R. 39.  Nevertheless, Plaintiff testified that he stopped working 50 to 60 hours a week "close to the end of, middle to the end of 2007." A.R. 40.

By 2008, Plaintiff "probably was down to about, I'd say about 40, 40 some odd hours.  That's when my, my, the foot and ankle was rolling onto the outside of the foot, and it was really blowing up on me." A.R. 40.  Plaintiff stated that he was working seven days a week, "but some

days I'd be on it for four or five hours, you know, other days, if I felt good, it would be an eight-hour day, you know." A.R. 40.  Plaintiff explained:

> GRILLE: Yeah, [in] 2008 I started, started winding down, and I started to take on more HVAC work, which was a little, less, less taxing on the body.  Like I said, I was unable to work at that kind of pace in 2008.
>
> ALJ: Okay, and what's involved with HVAC work?
>
> GRILLE: It's a little lighter work.  You know, it's not something you're going to have to you know, you're not [pouring] concrete.  You're not carrying lumber, and it's something that you're not necessarily on your feet eight, ten, twelve hours a day.
>
> ALJ: Well how many hours would you be on your feet when you did this type of work?
>
> GRILLE: Somedays I would be on my feet, you know, seven, eight hours, other days when I was unable to work, you know swelling persists I would be on my feet maybe an hour or I wasn't even able to work. I would be home icing it.
>
> ALJ: Well, in 2007, did you ever miss time at work?
>
> GRILLE: You know what, very rarely, very rarely in 2007. I might have had to work little – less hours, but no, I never missed a day of work.
>
> ALJ: How about in 2008?
>
> GRILLE: 2008, I did miss days, yes, sir.
>
> ALJ: How often?
>
> GRILLE: You know what, maybe one or two days a week.
>
> ALJ: And just so, I understand correctly, sir, in 2008 you, you missed work one to two days per week, but you were working about 40 hours every week, is that correct?
>
> GRILLE: Yeah, I would probably say on the average, close to about 40 hours, yeah.

A.R. 44-45.  Furthermore, Plaintiff testified that he did not receive any special accommodations, and that he did not require any help in performing his responsibilities at his company, since "[t]he budget didn't really allow that you know, as far as hiring an assistant [or] whatever the case may be."  A.R. 45.  In 2009, however, Plaintiff testified that he started working "substantially less" hours. A.R. 45.  Plaintiff explained, "I mean I would be you know, I would be working – I would just take basically jobs as they came in, small jobs, like a furnace replacement, so, 2009, I may

have been working a day or two a week." A.R. 46.  Because he experienced severe foot pain,

Plaintiff was only able to work a couple of hours a day. A.R. 46.  Despite the pain, Plaintiff stated,

"I would try and get in maybe an eight-hour day in if I was doing furnace replacement, and I had

to get the people heat, I would try and squeak out an eight-hour day out of it." A.R. 46.

At the conclusion of his testimony, Plaintiff's counsel was given leave to question Plaintiff,

who testified that he stopped "working full weeks" sometime in June or July of 2008:

> COUNSEL: In 2008, you stated you were doing 40 hours a week, although you
> might miss one or two days here and there, and then at some point in 2009 you were
> doing substantially less, only working one or two days a week.  Did that change
> from working essentially a full week to working one or two days a week, did that
> occur before or after you saw the orthopedist.
>
> GRILLE: That was before.
>
> COUNSEL: Okay.
>
> GRILLE: I saw him in, that had to be sometime in 2008.
>
> COUNSEL: So did you make that transition to not working full weeks at some
> point in 2008.
>
> GRILLE: Yes.
>
> COUNSEL: Would you know approximately when?
>
> GRILLE: I got to say sometime in June, July.

A.R. 47-48.  Plaintiff's counsel again repeated his request: "in light of the hearing testimony, I

think it would probably be prudent to amend the onset date to July of 2008, which seems to be

when [Plaintiff] made a transition from working essentially full work weeks to one to two days

per week." A.R. 50.  The ALJ stated that he would take that request "under advisement." A.R.

50.

## B. Review of ALJ's Findings

The ALJ issued a written decision on July 24, 2013.  See A.R. 23-31.  The ALJ first

addressed Plaintiff's attorney's request to amend Plaintiff's disability onset date from December

31, 2006 to "July 2008." A.R. 23.  The ALJ denied the request because Plaintiff had specifically

testified that his disability began on December 31, 2006.  A.R. 23.  The ALJ then found that

Plaintiff was not under a disability within the meaning of the Act from December 31, 2006, through

the date last insured, December 31, 2008, and as such, Plaintiff was ineligible for Social Security

benefits.   A.R. 24.  In particular, the ALJ made four findings of fact and conclusions of law:

> (i) The claimant last met the insured status requirements of the Social Security Act
> on December 31, 2008 (Exhibits 16 and 18);
>
> (ii) The claimant engaged in substantial gainful activity during the following
> period: December 31, 2006 through December 31, 2008 (20 C.F.R. 404.1520(b)
> and 404.1571 et seq.);
>
> (iii) Through December 31, 2008, there was no continuous 12-month period during
> which the claimant did not engage in substantial gainful activity; and
>
> (iv) The claimant was not under a disability, as defined by the Social Security Act,
> at any time from December 31, 2006, the alleged onset date, through December 31,
> 2008, the date last insured (20 C.F.R. 404.1520(b)).

A.R. 25, 31 (emphasis in the original).  In reaching those findings, the ALJ applied the standard

five-step process to determine if Plaintiff had satisfied his burden of establishing a disability.[1]

A.R. 21.  However, the ALJ stopped at Step One, because the ALJ found that Plaintiff "failed to

overcome the burden of proof that he was not engaging in substantial gainful activity from

December 31, 2006, the alleged disability onset date, through December 31, 2008, the date he was

last insured for Disability Insurance Benefits."  A.R. 31.

In determining whether Plaintiff engaged in substantial gainful activity after the alleged

onset date of December 31, 2006, the ALJ noted Plaintiff's testimony as follows: "his alleged

disability began on December 31, 2006 because on or about that time, his ability to work on a

---

[1] 20 C.F.R. § 404.1520 outlines the five-step process to determine whether a claimant is disabled,
and thus, entitled to disability benefits.  See Holley v. Colvin, 975 F. Supp. 2d 467, 476 (D.N.J.
2013).  Importantly, "[t]he claimant bears the burden of proof at steps one through four."  Id.
However, "[a]t step five, the burden of proof and production shifts to the Commissioner."  Id. at
477.

regular basis started to decline due to his lower back acting up and he could no longer work at his previous pace."[2]  A.R. 29.  Further, the ALJ noted that, in 2006, Plaintiff performed construction activities, such as "roofing, pouring concrete for foundations, light framing work, and heat, ventilation, air conditioning (HVAC) work, and he did hands on participation."  A.R. 29.  Then, in 2007, Plaintiff testified that "his health started to deteriorate and he was not working at the level that he previously worked in 2006."  A.R. 29.  Thus, the ALJ found that, while Plaintiff testified that he "was still working 50-60 hours a week in 2007," he was "working shorter days and he was missing days from work."  A.R. 29.  Nevertheless, the ALJ noted that Plaintiff was "performing all construction job duties, including operating construction equipment and handling every aspect of the job."  A.R. 29.

The ALJ explained that Plaintiff, in 2008, "reduced his hours to about forty hours [a week] because his foot and ankle were swelling and flaring up and he had a hard time being on his feet." A.R. 29.  As a result, Plaintiff "started to do less taxing work in 2008 and mainly did HVAC work, which was lighter than construction work."  A.R. 29.  While Plaintiff was still working seven days a week, the ALJ stated that Plaintiff "worked seven or eight hours on some days, but on other days, he would merely work an hour or not at all due to foot swelling."  A.R. 29.  In addition, the ALJ noted that Plaintiff "missed maybe one or two days a week," but on average, Plaintiff worked "close to forty hours a week."  A.R. 29.  Despite missing one or two days a week, the ALJ found that Plaintiff "did not received any accommodations when working in 2008…, and he did not require any help in performing his duties."  A.R. 29.  Finally, in 2009, the ALJ reported that

---

[2] The ALJ found that Plaintiff was self-employed at all relevant times, and he evaluated Plaintiff's employment activities under 20 C.F.R. § 404.1575, which is the regulation used to assess whether a self-employed individual was engaged in substantial gainful activity.  See Rubinson v. Comm'r of Soc. Sec., 96 F. Supp. 3d 386, 395 (D.N.J. 2015); 20 C.F.R. § 404.1575.  All parties agree that the ALJ applied the appropriate standard, but Plaintiff disagrees with the ALJ's conclusions.

Plaintiff testified that "he worked substantially less and maybe a day or two per week performing small jobs," based on his deteriorating health and foot problems.  A.R. 30.  Nevertheless, the ALJ stated that Plaintiff "later indicated that he reduced his work in June or July 2008 to one or two days a week after having surgery."  A.R. 30.

Furthermore, the ALJ considered Plaintiff's personal and business tax returns from 2007 through 2010.  A.R. 30.  After reviewing those tax returns, the ALJ generally found Plaintiff "was involved in a host of business enterprises, including a very active construction company with significant income and expenses."  A.R. 30.  While the ALJ noted that Plaintiff's "earnings record has no posted earnings for the period from 2006-2010," he reasoned, "[a]s a self-employed individual, he is in a position to decide as to how to report such earnings."  A.R. 30.  More specifically, however, the ALJ explained:

> Indeed, a review of the submitted tax returns for 2007-2010, which included personal and business tax returns (Exhibits 11 through 14), documents significant business income and expenses for these years.  The claimant's 2007 tax returns document that he had a capital gain of $1,005,237.00 and that he was involved in partnerships with three LLC companies.  The 2007 partnership tax return for M.G.M. Homes, Inc., documents gross receipt of sales of $1,655,000.00 and a gross profit of $291,666.00.  It appears that this profit was turned into a loss primarily due to interest payments of $557,441.00, as well as $446,060.00 from 'other deductions.'  This indicates that this company was very active and that the claimant was performing substantial gainful activity in 2007.

A.R. 30.  The ALJ found that Plaintiff was performing substantial gainful activity in 2008, as well.  See A.R. 30-31.  In regard to the three companies, in 2008, the ALJ found that those entities had income of $470,529.00, and that "[t]he 2008 partnership tax return from M.G.M. Homes, Inc., reflects gross receipt of sales of $7,625,000.00 and ordinary business income of $926,00.00 [sic] (Exhibit 12)."  A.R. 31.

In sum, the ALJ found that "[t]he overall record including the claimant's testimony suggests that he was actively involved in his construction business during the period at issue, from

December 31, 2006, the alleged disability onset date, through December 31, 2008, the date he was last insured for Disability Insurance Benefits." A.R. 30. The ALJ continued, "[i]t further indicates that [Plaintiff] rendered services that were significant to the operation of the business and received substantial income from the business," and that Plaintiff "engaged in substantial gainful activity because his work activity involved a significant number of hours, skills, energy output, duties, and responsibilities, as [compared] to that of unimpaired individuals in the community who are in the same or similar business as their means of livelihood." A.R. 30. As such, the ALJ concluded that Plaintiff "failed to overcome the burden of proof that he was not engaging in substantial gainful activity from December 31, 2006, the alleged disability onset date, through December 31, 2008, the date he was last insured for Disability Insurance Benefits," and therefore, Plaintiff was not disabled under the Act and he was not entitled to benefits. A.R. 31.

## II.    STANDARD OF REVIEW

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); see Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance.

McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  "It means such relevant evidence as a reasonable mind might accept as adequate."  Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924 (1993).  Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence.  See Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements.  See 42 U.S.C. § 423(c).  Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…." 42 U.S.C. § 423(d)(1)(A); see Plummer, 186 F.3d at 427.  An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability.  Id. at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled.  See 20 C.F.R. § 404.1520.  First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity."  Id. at § 404.1520(a); see Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987).  If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability

benefits.  See 20 C.F.R. § 404.1520(b); see also Bowen, 482 U.S. at 140.  Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c); see Bowen, 482 U.S. at 146-47 n.5.  Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b).  These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  Id.  A claimant who does not have a severe impairment is not considered disabled.  Id. at § 404.1520(c); see Plummer, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List").  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits.  See id. at § 404.1520(d); see also Bowen, 482 U.S. at 146-47 n.5.  If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent.  See 20 C.F.R. § 404.1526(a).  If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment.  Id.  An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar.  Williams, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" to perform his or her past relevant work.  20 C.F.R. §

404.1520(e); <u>Bowen</u>, 482 U.S. at 141.   If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); <u>Bowen</u>, 482 U.S. at 141-42.  The claimant bears the burden of demonstrating an inability to return to the past relevant work.  <u>Plummer</u>, 186 F.3d at 428.  Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." <u>Bowen</u>, 482 U.S. at 146-47 n.5; <u>Plummer</u>, 186 F.3d at 428.  This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience.  20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled.  <u>Id.</u>

## III.   DISCUSSION

### a.   <u>Substantial Gainful Activity</u>

Plaintiff argues that the ALJ erred by finding that Plaintiff engaged in substantial gainful activity from December 31, 2006 through December 31, 2008.  While Plaintiff concedes that he engaged in substantial work prior to July 1, 2008, Plaintiff contends that he stopped engaging in substantial gainful activity after that date.  Plaintiff faults "the ALJ [for] completely disregard[ing] and refus[ing] to address Grille's testimony regarding when and why he reduced his work schedule.  The ALJ then erroneously determined that Grille engaged in Substantial Gainful Activity throughout the entire year of 2008 *without making a determination as to the credibility or factual basis of the Plaintiff's post July 2008 testimony.*"  Pl.'s Br. at pg. 17 (emphasis in the original).  In opposition, Defendant argues that the ALJ's determination is supported by substantial evidence that Plaintiff was engaged in substantial gainful activity from December 31, 2006 through December 31, 2008, and as such, Plaintiff is not entitled to benefits.  Defendant maintains that

12

Plaintiff simply failed to meet his burden that he was not engaged in substantial gainful activity through his date of last insured status.

At Step One, the ALJ "must determine whether an applicant had engaged in substantial gainful activity since his [or her] alleged disability onset date" through the date of last insured status. Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 91 (3d Cir. 2007); see Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 634 (3d Cir. 2010) (stating that the claimant bears the burden of proof that he or she was not engaged in substantial gainful activity). Substantial work activity is defined as "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a); see Rubinson, 96 F. Supp. 3d at 395. Work activity is still substantial "even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." Id. Gainful activity is defined as "work activity that you do for pay or profit," and it is gainful "whether or not a profit is realized." 20 C.F.R. § 404.1572(b); see Rubinson, 96 F. Supp. 3d at 395.

Furthermore, when an individual is self-employed, three tests are used to determine whether that individual has engaged in substantial gainful activity. See 20 C.F.R. § 404.1575(a)(2)(i)-(iii); Rubinson, 96 F. Supp. 3d at 395. However, if the ALJ finds that the individual engaged in substantial gainful activity under the first test, then the individual is considered to have engaged in substantial gainful activity under the other two tests. See 20 C.F.R. § 404.1575(a)(2)(i)-(iii); Rubinson, 96 F. Supp. 3d at 395. The ALJ is required to address all three tests only if he or she finds that the individual was not engaged in substantial gainful activity. See 20 C.F.R. § 404.1575(a)(2)(i)-(iii); Rubinson, 96 F. Supp. 3d at 395 ("Thereafter, the ALJ only turns to the second and/or third tests, in the event the ALJ determines that the claimant does not meet the [substantial gainful activity] requirements of the first test."). Under the first test, a self-

employed individual engages in substantial gainful activity if he or she "renders services that are significant to the operation of the business and received a substantial income from the business."[3] 20 C.F.R. § 404.1575(a)(2)(i); see 20 C.F.R. § 404.1575(b)-(c).

In the instant matter, the ALJ found that Plaintiff failed to overcome the burden that he was not engaged in substantial gainful activity through the date of last insured status.  A.R. 30.  In regard to whether Plaintiff rendered significant services to his company through December 31, 2008, the ALJ found that "claimant's testimony suggests that he was actively involved in his construction business during the period at issues," and that Plaintiff had worked a significant amount of hours at his construction business throughout 2008.  See A.R. 30; see also 20 C.F.R. § 404.1575(a)(2)(i).  In particular, the ALJ found that Plaintiff testified that "[h]e was still working seven days a week [in 2008], but not always eight hours a day," and that "he missed maybe one or two days a week."  A.R. 29.  The ALJ further found that Plaintiff "reduced his work hours to about forty hours [a week in 2008] because his foot and ankle were swelled and flaring up and he had a hard time being on his feet."  A.R. 29.  In that connection, the ALJ noted that Plaintiff "did not receive any accommodations when working in 2008, except for taking time off, and did not require any help in performing his duties."  A.R. 29.  In regard to his work activity in 2009, the ALJ found that Plaintiff "worked substantially less and maybe a day or two per week performing small jobs. He asserted he had to reduce his work because of his health and foot problems."  A.R. 30.  Finally, the ALJ noted that Plaintiff "later indicated that he reduced his work in June or July 2008 to one to one or two days a week."  A.R. 30.

---

[3] As stated, supra, the ALJ found that Plaintiff was self-employed at all relevant times.  However, because the ALJ found that Plaintiff was engaged in substantial gainful activity under the first test, he did not address the second and third tests.  See 20 C.F.R. § 404.1575(a)(2)(i); see also Rubinson, 96 F. Supp. 3d at 395.

Nevertheless, Plaintiff's counsel argues that, "[b]eginning in 2008 through his July 2008 dramatic reduction in work, he continued to wind down and also reduced the type of work he performed.... As such, he frequently missed 1 or 2 days of work per week. But on average, he still worked about 40 hours a week up until July 2008." Pl.'s Br. at 20 (emphasis in the original). Plaintiff's counsel further argues that, "[b]y July of 2008 Grille greatly reduced his work activities and began to work substantially less, just took small jobs, and only worked 1 or 2 days a week and would try to 'squeak out' an 8-hour day on those 1 to 2 days per week he worked." Id. (Emphasis in the original). Relying on Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001), Plaintiff's counsel contends that the ALJ was required to make an explicit credibility determination when he refused to consider Plaintiff's testimony that he experienced a dramatic reduction in his work activity after July 1, 2008. Thus, Plaintiff's counsel requests that the Court vacate and remand the ALJ's decision.

However, Plaintiff's reliance on Fargnoli is misplaced. In Fargnoli, the Third Circuit declared that it "has long been concerned with ALJ opinions that fail properly to consider, discuss and weigh relevant medical evidence." Fargnoli, 247 F.3d at 42. At Step Four, which requires a residual functional capacity assessment, the Third Circuit stated, "[w]here there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate and remand a case where such an explanation is not provided." Id. However, the court explained, "Although we do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant... has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law." Id. Stated differently, an "ALJ must weigh the credibility of the medical evidence and non-

medical evidence before him to determine a claimant's [residual functional capacity]." Yensick v. Barnhart, 245 Fed. App'x 176, 181 (3d Cir. 2007); see Irizarry v. Barnhart, 233 Fed. App'x 189, 192 (3d Cir. 2007) ("Because the ALJ did not discuss all of the relevant evidence or explain his rejection of medical evidence offered by [claimant]..., his decision is unsupported by substantial evidence."). However, in this case, the ALJ never proceeded past Step One. More importantly, there is no medical evidence in the administrative record to support his claim for disability insurance benefits.[4] See Fargnoli, 247 F.3d at 42; Yensick, 245 Fed. App'x at 181. Accordingly, Fargnoli is not helpful.

While Plaintiff seeks to characterize the issue as a failure to make an explicit credibility determination, the relevant inquiry here is whether the ALJ properly evaluated Plaintiff's testimony, as well as his personal and business tax returns, to determine whether Plaintiff had engaged in substantial gainful activity through December 31, 2008. When considering the record as a whole, even if there is contrary evidence in the record, an ALJ's decision will be upheld as long as it is supported by the evidence. See Simmonds, 807 F.2d at 58; Malloy v. Comm'r of Soc. Sec., 306 Fed. App'x 761, 764 (3d Cir. 2009) ("The presence of evidence in the record that supports a contrary conclusion does not undermine the Commissioner's decision so long as the record provides substantial support for that decision."); see also Horodenski v. Comm'r of Soc. Sec., 215 Fed. App'x 183, 186 (3d Cir. 2007) ("In determining whether there is substantial evidence to support the ALJ's conclusion, we consider the record as a whole."). Thus, the ALJ's

---

[4] A district court cannot consider evidence extrinsic to the administrative record in assessing whether there is substantial evidence to support the ALJ's decision. See Matthews, 239 F.3d at 593; see also Lloyd v. Barnhart, 47 Fed. App'x 135, 137-138 (3d Cir. 2002) (stating that, because district courts have no fact finding role in social security cases, that court "may only rely on the administrative record" as provided by the ALJ). Here, while it is possible Plaintiff submitted medical records at the hearing, the administrative record before this Court does not contain any medical records; this Court must only rely on the evidence on appeal.

decision will not be disturbed when the ALJ exhaustively considers the evidence in record, and reasonable minds could accept such evidence as adequate to support such a conclusion.  See Perkins v. Barnhart, 79 Fed. App'x 512, 514-515 (3d Cir. 2003) (stating that, since the ALJ exhaustively considered the evidence in the record, the court concluded the claimant's "argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."); see also Williams, 970 F.2d at 1182; Plummer, 186 F.3d at 427.

Here, it is clear that the ALJ performed an exhaustive examination of all of the evidence in the record, including Plaintiff's own testimony and his tax returns, and that there is substantial evidence that Plaintiff rendered significant services to the operation of his business through December 31, 2008.  See 20 C.F.R. § 404.1575(b) (stating that a self-employed individual, who employs more than one other individual, provides significant services if he or she "renders management services for more than 45 hours a month regardless of the total management time required by the business.").  On two separate occasions, Plaintiff testified that he was working approximately forty hours a week in 2008, and that he only missed one or two days a week.  See A.R. 40, 44-45.  In addition, Plaintiff testified that he did not receive any accommodations, nor did he require any help in performing his duties.  See A.R. 45.  Beginning in 2009, Plaintiff stated that he began working substantially less hours, and that he was started working a day or two per week.[5]  See A.R. 45-46.  Based on that evidence, there is substantial evidence that Plaintiff

_____

[5] As stated, supra, Plaintiff's counsel argues that, "[b]y July of 2008 Grille greatly reduced his work activities and began to work substantially less, just took small jobs, and only worked 1 or 2 days a week and would try to 'squeak out' an 8-hour day on those 1 to 2 days per week he worked." Pl.'s Br. at pg. 20 (emphasis in the original).  However, Plaintiff's counsel mischaracterizes Plaintiff's testimony, since Plaintiff made those comments in connection with his work activities in 2009.  Thus, Plaintiff's comments do not support the position that he experienced a "dramatic reduction" of work activities in either June or July of 2008.  Rather, Plaintiff simply testified, somewhat vaguely, that he reduced his work activities after he saw his orthopedist, which was "sometime in June, July" of 2008.  A.R. 47-48.

rendered management services for more than 45 hours per month.  Nevertheless, Plaintiff inconsistently testified that he stopped working full weeks in either June or July of 2008.  See A.R. 47-48.  However, even if Plaintiff started working one to two days a week in 2008, there is substantial evidence that he continued to work more than 45 hours per month, since Plaintiff testified that he often worked eight hours a day in both 2008 and 2009.  See A.R. 40, 45-46. Finally, the ALJ also relied upon Plaintiff's personal and business tax returns, and he found that those tax returns supported the conclusion that Plaintiff was engaged in substantial gainful activity through December 31, 2008.  Distilled to its essence, Plaintiff's argument here amounts to nothing more than a mere disagreement with the ALJ's ultimate decision, which is insufficient to overturn that decision.  See Perkins, 79 Fed. App'x at 514-515.

In addition, there is also substantial evidence in the record that Plaintiff received substantial income from his business through December 31, 2008.  See 20 C.F.R. § 404.1575(c) (stating that an individual received substantial income if his or her countable income remains comparable to his or her pre-disability income); see Rubinson, 96 F. Supp. 3d at 398.  In his written decision, the ALJ found that Plaintiff had received substantial income from his construction business, since "[a] review of [Plaintiff's personal and business] tax returns documents that the claimant was involved in a host of business enterprises, including a very active construction company with significant income and expenses."  A.R. 30.  At the hearing, Plaintiff testified that he "would draw... a minimal check each week" from the company for his labor, but he "didn't really, really get paid until, until closing" of a house.  A.R. 41.  He explained, "I don't think 2007 was too heavy. A lot of our closings came in I think 2008." A.R. 41.  Furthermore, after reviewing his personal and business tax returns, the ALJ found that Plaintiff made a significant amount of income in 2008, which is a finding that Plaintiff does not appear to dispute.  See A.R. 30-31; Williams, 970 F.2d at 1182

(stating that the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."). To the contrary, Plaintiff concedes that he performed substantial gainful activity prior to July 1, 2008, and he has failed to submit evidence that he stopped doing so after that date, albeit he testified in response to his counsel's questions, in general fashion, that he might have curtailed some of his activities at that time.

Accordingly, there is substantial evidence to support the ALJ's conclusion that Plaintiff engaged in substantial gainful activity throughout the entire year of 2008. See Plummer, 183 F.3d at 428 ("If a claimant is found to be engaged in substantial activity, the disability claim will be denied."); see 20 C.F.R. § 404.1575(a)(2)(i)-(iii).

**b.    The Disability Onset Date**

Plaintiff also contends that the ALJ erred by not allowing Plaintiff to amend his alleged disability onset date from December 31, 2006 to July 1, 2008 to conform with the evidence adduced at the hearing. In particular, Plaintiff argues that the ALJ, in his written decision, either ignored or misstated pertinent evidence that clearly established that Plaintiff stopped engaging in substantial gainful activity after July 1, 2008. Had the ALJ considered this evidence, he argues, the ALJ would have been compelled to grant his request to amend the onset date. In opposition, Defendant argues that the ALJ acted within his authority to establish the disability onset date, pursuant to Social Security Ruling 83-20, and that the ALJ did not abuse his discretion when he denied Plaintiff's request to amend the date to July 1, 2008.[6]

---

[6] Defendant does not dispute that the ALJ is permitted to amend the onset date, if appropriate. See SSR 83-20, 1983 SSR LEXIS 25, at *4 ("A change in the alleged onset date may be provided in a Form SSA-5002 (Report of Contract), a letter, another document, or the claimant's testimony at a hearing.").

Social Security Ruling 83-20 "provides ALJs with an analytical framework for determining a disability onset date." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 548 (3d Cir. 2003) (citing SSR 83-20, 1983 SSR LEXIS 25, at *1); see Perez v. Comm'r of Soc. Sec., 521 Fed. App'x 51, 56 (3d Cir. 2013). That Ruling states, "[i]n addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability." SSR 83-20, 1983 SSR LEXIS 25, at *1; see McAdams v. Secretary of Health and Human Services, 726 F. Supp. 579, 587 (D.N.J. 1989) (stating that the task of the district court in reviewing the ALJ's onset determination is whether the chosen onset date is supported by substantial evidence). "The 'onset date of disability' is defined as 'the first day an individual is disabled as defined in the Act and the regulations.'" Perez, 521 Fed. App'x at 56 (quoting SSR 83-20, 1983 SSR LEXIS 25, at *2); see 42 U.S.C. § 423(d)(1)(A). In regard to disabilities with a non-traumatic origin, "[t]he starting point in determining the date of onset of disability is the individual's statement as to when the disability began." SSR 83-20, 1983 SSR LEXIS 25, at *4; see Perez, 521 Fed. App'x at 56. The ALJ is also permitted to consider the individual's work history, as well as his or her medical records. See SSR 83-20, 1983 SSR LEXIS 25, at *4 ("The weight to be given any of the relevant evidence depends on the individual case."); see also Newell, 347 F.3d at 548 n.6. Nevertheless, "the date alleged by the individual should be used if it is consistent with all the evidence available." SSR 83-20, 1983 SSR LEXIS 25, at *3; see Perez, 521 Fed. App'x at 56; see also Fagans v. Comm'r of Soc. Sec., No. 08-5775, 2009 U.S. Dist. LEXIS 121083, at *23 (D.N.J. Dec. 30, 2009).

In the instant matter, the ALJ noted that, "[a]t the conclusion of the hearing, the claimant's attorney requested to amend the date on which his disability began to July 2008, which the undersigned took under advisement." A.R. 23. Nevertheless, the ALJ denied Plaintiff's request to amend his onset date "because the claimant testified that his disability began on December 31,

2006." A.R. 23. While Plaintiff again contends that the ALJ failed to consider the fact that Plaintiff stopped working full weeks in either June or July of 2008, as discussed supra, the ALJ did note Plaintiff's testimony in that regard. Nonetheless, as the ALJ accurately recounted, Plaintiff unequivocally testified that his alleged disability onset date was December 31, 2006, and he also provided an explanation:

> ALJ: All right, Mr. Grille, it's my understanding you alleged that your disability began on December 31st of 2006, is that correct?
>
> GRILLE: Yes.
>
> ALJ: Okay, what is significant about this date? Why is that the day you alleged that your disability began?
>
> GRILLE: Well, on or around that time we – my ability to actually [do] work on a regular basis, you know [was] starting to decline. The, you know, years ago, prior to that I was you know six, seven days a week, lower back, foot started acting up, and I was just unable to work [at] that you know, pace that I was prior to this.

A.R. 38. While an individual's statement as to when the disability began is important evidence in determining an onset date, it is not the only factor. See Perez, 521 Fed. App'x at 56; Newell, 347 F.3d at 548 n.6. The ALJ may also consider the individual's work activities and the medical evidence. Id. In regard to his work activities, Plaintiff testified that his health continuously deteriorated from December 31, 2006 through December 31, 2008. See A.R. 38-46. However, the administrative record on this appeal does not contain any medical records. See SSR 83-20, 1983 SSR LEXIS 25, at *4 (stating that "medical evidence serves as the primary element in the onset determination."). Based on the available record, the ALJ properly relied upon Plaintiff's statement as to when his disability began. See SSR 83-20, 1983 SSR LEXIS 25, at *3 (stating that "the date alleged by the individual should be used if it is consistent with all the evidence available."). Moreover, Plaintiff's alleged disability onset date is consistent with his testimony as to his work activities, since Plaintiff testified that, starting in December 2006, he experienced a continuous worsening of his health through December 2008. See A.R. 38-46. After reviewing the

21

administrative record, this Court concludes that the ALJ's determination of December 31, 2006 as the disability onset date is supported by substantial evidence.  See <u>McAdams</u>, 726 F. Supp. at 587.

**IV.      CONLCUSION**

For the reasons set forth above, the Court finds that the ALJ's decision is supported by substantial evidence in the record.  Accordingly, the ALJ's decision is affirmed, and Plaintiff's Complaint is dismissed.

DATE: October 25, 2016

<u>/s/ Freda L. Wolfson</u>
The Honorable Freda L. Wolfson
United States District Judge